# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| KAIFI, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> VERIZON COMMUNICATIONS INC., et al, <br><br> Defendants. | Civil Action No. 2:20-cv-00280-JRG <br><br> **JURY TRIAL DEMANDED** |

## VERIZON'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. DISPUTED TERMS ...............................................................................................................2

    A.     "selecting one of the indoor and the outdoor networks in accordance with the determined location of the data communication terminal" (claim 1) ............... 2

        1.     The Intrinsic Record Support Verizon's Construction. .............................. 3

        2.     Verizon's Construction Is Consistent With The Certified Translation Of The Priority Korean Application. .............................................................. 5

        3.     In Its Response To T-Mobile's Alice-based Motion, KAIFI Repeatedly Argued Exactly What Verizon Is Presently Arguing................................. 6

        4.     The Court's Prior Construction Of "Provides Roaming" Fully Supports Verizon's Construction And Rebuts KAIFI's Construction....................... 7

        5.     Verizon's Positions Match KAIFI's Expert In The AT&T Case. .............. 8

        6.     KAIFI's Construction Seeks To Leave This Term Meaningless And Thereby Read This Term Out Of The Claim. ............................................. 9

    B.     "a second step of determining whether when indoor system ID information is received by the data communication terminal and the received indoor system ID information is identical to the indoor system ID information stored in the location register" (claim 12)............................................................. 10

## TABLE OF EXHIBITS

| Exhibit | Abbreviation[1] | Description |
|---|---|---|
|  | Ex. [Letter] | Exhibit to Declaration of Glenn Richeson in Support of Verizon's Responsive Claim Construction Brief |
|  | Ex. [Number-Letter] | Exhibit to Declaration of Matthew J. Hawkinson in Support of Plaintiff KAIFI LLC's Opening Claim Construction Brief (Dkt. No. 56-1) |
| Ex. 1-A | '728 Patent | U.S. Patent No. 6,922,728 |
| Ex. 1-B | Rysavy Depo. | Excerpted transcript of deposition of Peter Rysavy, March 31, 2021 |
| Ex. 1-C | RFC 2002 | Excerpted Internet Engineering Task Force, RFC 2002, October 1996 |
| Ex. A | KPA | Certified Translation of the Korean priority application (Dkt. 139-7) in *KAIFI LLC v. T-Mobile US, Inc. et al.*, C.A. No. 2:20-cv-00281-JRG (E.D. Tex., Aug. 28, 2020) |
| Ex. B | KAIFI Sur-reply | KAIFI Sur-Reply re Motion to Dismiss (Dkt. 85) in *KAIFI LLC v. T-Mobile US, Inc. et al.*, C.A. No. 2:20-cv-00281-JRG (E.D. Tex., Aug. 28, 2020) |
| Ex. C | AT&T Order | Claim Construction Order (Dkt. 104) in *KAIFI LLC v. AT&T, Inc. et al.*, C.A. No. 2:20-cv-00138-JRG (E.D. Tex., Apr. 26, 2019) |
| Ex. D | Kelley Decl. | Declaration of Brian T. Kelley, Ph. D Regarding Claim Construction (Dkt. 62-10) in *KAIFI LLC v. AT&T, Inc. et al.*, C.A. No. 2:20-cv-00138-JRG (E.D. Tex., Apr. 26, 2019) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| KAIFI | Plaintiff KAIFI, LLC |
| Op. Br. | Plaintiff KAIFI, LLC's Opening Claim Construction Brief (Dkt. 56) |
| T-Mobile Case | *KAIFI LLC v. T-Mobile US, Inc. et al.*, C.A. No. 2:20-cv-00281-JRG (E.D. Tex., Aug. 28, 2020) |
| AT&T Case | *KAIFI LLC v. AT&T, Inc. et al.*, C.A. No. 2:20-cv-00138-JRG (E.D. Tex., Apr. 26, 2019) |

---

[1] In this brief, all emphases are added unless otherwise stated.

i

# TABLE OF AUTHORITIES

**Cases**

*02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ................... 3

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.*, 2:15-CV-576-RWS-RSP,  2016 WL 7364266 (E.D. Tex. Dec. 19, 2016) ........................................................................................................ 12

*GPNE Corp. v. Apple Inc.*, 830 F.3d 1365 (Fed. Cir. 2016) ........................................................... 4

*Gree, Inc. v. Supercell Oy*, No. 219-CV-00070-JRG-RSP, 2020 WL 2332144 (E.D. Tex. May 11, 2020) ................................................................................................................................ 2

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ........................ 11, 12

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) .......................................... 11

*Visto v. Microsoft*, No. CIV.A. 2:05-CV-546, 2007 WL 5688730 (E.D. Tex. Aug. 28, 2007) ...... 2

**Regulations**

Manual of Patent Examining Procedures (MPEP), § 2304.1(c) .................................................... 6

I. **INTRODUCTION**

  Verizon respectfully submits this brief to address two claim construction issues *in addition* to those presented in the T-Mobile case: (1) the construction for "selecting one of the indoor and the outdoor networks in accordance with the determined location of the data communication terminal" and (2) whether the second step in claim 12 is indefinite. Regarding the remaining claim construction terms, Verizon entirely joins the positions and reasoning set forth in T-Mobile's claim construction brief. The basis for consolidating the *Markman* hearings was a recognition that, except for the two additional issues identified herein, "[f]or each of these seven briefed terms [in the T-Mobile case], Verizon's proposed construction matches T-Mobile's proposed construction." *See,* D.I. 052 at 4. KAIFI's suggestion of inconsistency between the construction of these two terms and those set forth in the T-Mobile briefing is incorrect.

  Turning to the first term, "selecting one of the indoor and the outdoor networks *in accordance with* the determined location of the data communication terminal," the dispute is a simple one: must the "selecting" of network path by the router be *based on* the data communication terminal's location stored in the location register? The clear answer is: yes. Verizon's position is supported by: (1) the intrinsic record, (2) the certified translation of the Korean priority application, (3) the Court's prior construction in the AT&T case, (4) KAIFI's argument in opposing T-Mobile's *Alice* Motion, and (5) KAIFI's expert testimony in the AT&T case.

  KAIFI does not address Verizon's "based on" language and instead argues that Verizon has taken a position for the "selecting" term that somehow supports KAIFI's incorrect arguments for other terms addressed in the T-Mobile briefing. For example, KAIFI is incorrect that Verizon's construction of the "selecting" term implies that the "location register" is in the data communication terminal. Op. Br. at 2. To the contrary, Verizon agrees with T-Mobile that the

intrinsic record and KAIFI's repeated admissions require that the "location register" is external to the "data communication terminal." Returning to the "selecting" term at issue here, KAIFI's inability to articulate a basis for why Verizon's position and support are incorrect, warrants finding in Verizon's favor.

The second term (the second step of method claim 12) is indefinite. KAIFI does not dispute that the term needs construction, but KAIFI's proposal rewrites the claim language in an effort to preserve validity and finds no basis in law or fact to do so. Verizon respectfully requests that the Court find that the second step of claim 12 is indefinite.

## II.   DISPUTED TERMS

### A.   "selecting one of the indoor and the outdoor networks in accordance with the determined location of the data communication terminal" (claim 1)

| KAIFI's Construction | Verizon's Construction (revised) |
|---|---|
| No additional construction needed. | "selecting one of the indoor and outdoor networks based on the determined location of the data communication terminal, which is stored in the location register." |

The dispute centers on the meaning of "in accordance with" – specifically, whether the router, when performing the "selecting" of the specific network (indoor or outdoor), uses the location (of the data communication terminal) stored in the location register. As an initial matter, consistent with Verizon's proposed construction here, this Court has repeatedly clarified claim terms such as "in accordance with" where the claims describe an operation to be performed. *E.g., Gree, Inc. v. Supercell Oy*, No. 219-CV-00070-JRG-RSP, 2020 WL 2332144, at *28 (E.D. Tex. May 11, 2020) (construing "in accordance with" as "in response to and based on" where the specification described an operation), *Visto v. Microsoft*, No. 2:05-CV-546, 2007 WL 5688730, at *28 (E.D. Tex. Aug. 28, 2007) (construing "in accordance with" term to include "based on"). Such clarification – *i.e.*, that the router's "selecting" decision must be based on the location of the mobile device that is stored in the location register – is appropriate here too

2

especially in view of (1) the intrinsic record, (2) the certified translation of the Korean priority application, (3) the Court's prior construction in the AT&T case, (4) KAIFI's argument in opposing T-Mobile's *Alice* Motion, and (5) KAIFI's expert testimony in the AT&T case.

Because the plain meaning of the terms are actively in dispute, the Court's construction should resolve this underlying dispute. *See 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-1361 (Fed. Cir. 2008). Without Verizon's proposed construction, this phrase could be improperly interpreted by a lay juror to mean the router's "selecting" does not need to use the actually determined location stored in the location register.  Rather, the claim could be mistakenly understood to be met where the router simply guesses right – in other words, the router routes communications in a way that is serendipitously consistent with the location in the location register, even without any reference to the location stored in the location register. Only Verizon's construction resolves the parties' *O2 Micro* dispute and should be adopted. *Id.*

KAIFI apparently misunderstood Verizon's position on this term. Op. Br. at 2. To eliminate any ambiguity, Verizon clarified its proposed construction by adding the words "which is" and a comma to separate out the phrasing that KAIFI misunderstood. Verizon's proposed construction identifies that the selection of "one of the indoor and outdoor networks" is based on the "determined location stored in the location register," "of the data communication terminal."

### 1. The Intrinsic Record Support Verizon's Construction.

The intrinsic record repeatedly and consistently describes that the router selects a network (*i.e.*, indoor or outdoor) based on information derived from the "location register," and that the location register "controls" the network path (of the router). When the disputed claim language is read in context, it is clear that a router "determines the location of the data communication terminal stored in the location register," and that the "router" selects "one of the indoor and outdoor networks" **based on** the "determined location" from the "location register." *See GPNE*

3

*Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016).  This is what is set forth in claim 1:

> **a location register that stores location information of the data communication terminal** received through the indoor network or outdoor wireless internet network; and
>
> **a router that determines the location of the data communication terminal stored in the location register** and provides roaming of voice/data signals provided to the user **by selecting one of the indoor and the outdoor networks in accordance with the determined location** of the data communication terminal.

'728 Patent, Claim 1.  In other words, the "determined location" that the router uses to make decisions is from the "location register that stores location information of the data communication terminal."

The specification is also unequivocal that the "router" receives "location information" from the "location register" to provide selection of one of the indoor network and outdoor wireless internet network.

> The location register 80 *controls a path* of the incoming messages or voice data transmitted to the internet 50.  *If it is determined that the user's location stored in the location register 80* has been changed from the outdoors to the indoors, the router connected with the location register transfers the voice data or incoming messages of the recipient to the indoor gateway 100 . . ."

'728 Patent at 10:44–52.  The router can only "*determine* that the user's location stored in the location register" has changed if the router actually accesses and uses that stored location of the data communication terminal.  Similarly, the location register can only "*control*" the path if the router switching is based on the value in the location register.

The linkage between the determination of the location "stored in the location register" with the router's switching decision is further supported by the remainder of the specification.  For example, the specification provides that "network paths … are switched *depending on* whether a user is located indoors or outdoors."  *Id*. at 2:34-38.  In that same paragraph, it further states "a roaming service is provided through an optimal network path *depending on* whether the

4

user is located indoors or outdoors." *Id*. at 2:49-51.[2]

Moreover, the specification describes making its "selecting" decision ***only*** by using the information stored in the location register.  First, "[t]he location register 80 detects the location of recipient and transfers information to a relevant router." *Id.* at 7:48-50.  Then, the router performs functions, including the "selecting" based on location information received. *Id*. at 7:6-8 ("routers perform function to transmit messages to the internet ***based on*** information provided thereto by a network protocol."), 10:9-13 ("The location of the PDA 10 is registered into the location register 80, after going through the authentication of the fact that the PDA has been moved by the location register through an outdoor or indoor wireless LAN network ***based on*** the mobile IP message.").  Tellingly, the specification does not describe (and KAIFI does not identify) any situation in which the router has a capability of changing its switching decision between indoor and outdoor networks on any basis other than from the location information of the data communication terminal stored in the location register.  Any such configuration would, of course, conflict with the statement that the location register "controls" the network path.

        2.     Verizon's Construction Is Consistent With The Certified Translation Of The Priority Korean Application.

KAIFI claims priority to a Korean application.[3]  The Korean priority application is in

---

[2]*See also id.* at 3:9-15 ("The present invention includes a location register for storing location information transmitted from the wireless internet terminal in order to confirm as to whether the user of the wireless internet terminal is located indoors or outdoors."); 9:54-67 ("If the location of the PDA 10 is registered into the location register, the PDA is connected with the internet…" and calls can be transmitted to the PDA).

[3]T-Mobile submitted a certified translation of the Korean priority application.  Ex. A, KPA.  Notably, KAIFI did ***not*** submit a certified translation with its U.S. patent application.  The PTO presently requires a certified translation of the priority application, although it did not so require in 2001 when the '728 patent application was filed.  *See* Manual of Patent Examining Procedures (MPEP), § 2304.1(c).

5

complete consonance with Verizon's position that the "in accordance with" means "based on". Specifically, throughout the Korean priority application the language used was "according to":

> A router for judging the location of the data communication terminal stored in the location register, and roaming the voice/data signal provided to the user by selecting either an outdoor or indoor network ***according to*** the location of the data communication terminal.

Ex. A, KPA at p. 44-31 (claim 1); *see also* ¶ 86 ("voice data is transmitted from the recipient to the user's PDA … ***according to*** the location registered *in* the location register"); ¶ 112 ("transmitted to the indoor gateway … ***according to*** the location information of the user registered in the location register"); ¶ 129 ("transmits an incoming message or voice data to the indoor gateway ***according to*** the location of the user stored in the location register").

Indeed, the Korean priority application further provides that: "***In the present invention, the network path for the roaming service is different depending on the location information stored in the location register.***" *Id.* at ¶ 24. The present invention discussion continues that:

> <19> The present invention for solving the above technical problems, <20> allows a network path (i.e., connection of a communication network) capable of connecting to the internet or the PSTN to be different ***depending on whether the user is outdoors or indoors***. . . ***By switching network connection according to the user's location status or location movement***, the user can be guaranteed better call quality at a low cost. In this case, ***depending on whether the user is indoors or outdoors***, the roaming service is performed according to the optimal network path.

*Id.* at ¶¶ 19-20; *see also id.* at ¶ 30 (switching "depending on" the location "stored in the location register"); ¶ 65; ¶ 95 ("transmission path for the incoming message or voice data transmitted to the internet (50) is controlled by the location register…").

Tellingly, KAIFI ignores the Korean application since any construction other than that proposed by Verizon would not have support in the Korean priority application.

   3. <u>In Its Response To T-Mobile's Alice-based Motion, KAIFI Repeatedly Argued Exactly What Verizon Is Presently Arguing.</u>

In opposing T-Mobile's motion to dismiss that the '728 claims do not recite patentable

6

subject matter (T-Mobile case at D.I. 55), KAIFI argued that the switching decision is **based on** the actual location information in the location register.

> The terminal then updates the location information in the network's location register and **based on the updated location information**, the network can then correctly decide whether the traffic should go through the indoor gateway or not.

Ex. B, KAIFI Sur-Reply at 6. This was not an isolated statement by KAIFI, but a central premise of its opposition to T-Mobile's motion.

> The system is informed of the terminal's location update via <u>the information stored in the location register</u> (the third recited component), which receives "**through** the indoor network or outdoor wireless internet network" the location information of the terminal. ... Once the system (specifically, the fourth recited component, a router alone or in combination with other equipment such as the user device) *determines that the terminal has moved from outdoors to indoors based on the updated location information*, the traffic can then be routed through the indoor gateway associated with the indoor system ID information, resulting in automatic switching to the indoor network via the indoor gateway

*Id*. at 2.

KAIFI also repeated the specification phrase that "[t]he location register 80 controls a path of the incoming messages of voice data transmitted to the internet 50." According to KAIFI, in this passage "the specification expressly links the location information stored in the location register with the automatic network switching without service interruption." *Id*. at 5.

        4.      <u>The Court's Prior Construction Of "Provides Roaming" Fully Supports Verizon's Construction And Rebuts KAIFI's Construction.</u>

Verizon's proposed construction aligns with this Court's construction for the term "provides roaming of voice/data signals provided to the user." *See* Ex. C, AT&T Order at 7-10. The Court determined that this claim element "provides **switching** the network path of the voice/data communications **automatically and without interruption**." *Id*. at 10.

In order to "switch[]… automatically and without interruption," the switching decision would need to be based upon *something* definitive – which the specification, states is the location

7

in the location register. *See e.g.,* '728 Patent at 7:48-50 ("[t]he location register 80 detects the location of recipient and transfers information to a relevant router.").

The Court's analysis in arriving at its construction is instructive. The Court stated:

> the specification states that "[a]ccording to the present invention for accomplishing the aforementioned objects, *network paths (i.e.* **connection** *paths of a communication network)* capable of connecting with the internet, a PSTN, or the like *are switched* **depending on** whether a user is located indoors or outdoors." '728 Patent at 2:34–38.

*Id*. at 8-9 (italicized emphasis in original). The "depending on" quoted by the Court confirms that the switching decision is made using the specific location of the data communication terminal stored in the location register – not by random chance or some other mechanism.

Also, in construing the term "location register", the Court relied upon the specification passage stating that "*[t]he location register 80 controls* a path of the incoming messages …" Ex. C, AT&T Order at 41. The citation to this passage to reject the indefiniteness challenge confirms its importance to the claims. The location register can "control" the network path only if the router uses the information in the location register to perform the "switching" that is "automatic and without interruption."

### 5. Verizon's Positions Match KAIFI's Expert In The AT&T Case.

KAIFI's expert in the AT&T case, Dr. Kelley agreed that the router selects a network based on the determined location from the location register. *See* Ex. D, Kelley Decl.. Consistent with the specification (and Verizon's positions), Dr. Kelley testified:

> These disclosures inform a POSA what *a "location register"* is, does and how it operates in conjunction with the rest of the system. It is a register. *It controls a path of the data* transmitted to the internet. It stores location information transmitted from the data communication terminal *which is used to determine whether the terminal is indoors or outdoors*. It accepts registration messages transferred to it through a BTS, BTC, and router, in order to register a user's location. It *transfers location information to a router*.

*Id*. at ¶ 199. Dr. Kelley also stated that:

8

> The claimed system …comprises *a location register* that stores location information *and a router that controls* the switching between the indoor network and the outdoor wireless internet network, *depending on the determined location* ….

*Id.* at ¶ 58; *see also id.* at ¶ 198 (quoting specification that "location register 80 controls a path"); ¶ 194 (same). Thus, KAIFI's expert stated, as Verizon proposes, that the router makes the switching decision "depending on" (*i.e.* based on) the location stored in the location register.

      6.    <u>KAIFI's Construction Seeks To Leave This Term Meaningless And Thereby Read This Term Out Of The Claim.</u>

KAIFI raises no substantive challenges to Verizon's proposed construction. Instead, KAIFI's brief focuses on whether a location register can be "distributed" or whether it has a particular physical location. Op. Br. at 2-7. While Verizon disagrees for the reasons set forth in T-Mobile's briefing of the "location register" term, it is irrelevant to the issue here as to the instant claim construction issue whether: "selecting … *in accordance with* the determined location …" means the selection must be *based upon* the determined location. Thus, for the present dispute, regardless of any "distributed" nature of the location register, the router must base its network switching decision on the location information from the location register.

Additionally, KAIFI does not explain how a "distributed" location register can "control" the path because there would not be any single value that identifies which path should be chosen. In other words, in the "distributed" location register posited by KAIFI, there apparently could be multiple different "location register" elements scattered throughout a network. In such a configuration, the system has no reference for how to select the network path—for example, it is unclear from which part of the multiple parts of the "distributed" location register the router would determine the location of a particular data communication terminal.

KAIFI's proposed "no additional construction needed" is a red herring because it permits KAIFI to advance ambiguous infringement theories by alleging infringement of the disputed

9

term against any device it chooses that may include information relating to location derived from sources outside of the claimed "location register." Not only is KAIFI's application of the claim divorced from the specification and the rest of the claim, it leaves open the question of the meaning of "in accordance with" as identified in the disputed term. Specifically, it appears that KAIFI's non-construction of this limitation provides that the router, by pure chance, selects a network path to the data communication terminal that is consistent with the stored location information, even if ***not*** based upon that stored location information, is sufficient. As discussed above, that is not what the claims nor specification provide. KAIFI "distributed" location register argument, not only has no support in the intrinsic record,[4] but further untethers the claims from the alleged invention in that not only is "pure chance" sufficient, but the "stored location information" can now presumably reside anywhere—for where ever it resides is what KAIFI will allege is part of this contrived "distributed" location register.

KAIFI's efforts to avoid construction and keep this limitation as vague as possible renders the limitation essentially (and impermissibly) meaningless.

    **B.**    **"a second step of determining whether when indoor system ID information is received by the data communication terminal and the received indoor system ID information is identical to the indoor system ID information stored in the location register" (claim 12)**

| KAIFI's Construction | Verizon's Construction |
|---|---|
| "a second step of determining whether the received indoor system ID information is identical to indoor system ID information stored in the location register when indoor system ID information is received by the data communication terminal" | Indefinite |

Verizon recognizes that the Court construed this term in the AT&T case, and KAIFI adopted that construction as its proposed construction. However, the prior construction does not

---

[4]Tellingly, KAIFI does not identify a single citation in the specification that discusses a "distributed" register, or how a "distributed" location register can "control" the path.

cure the fact that the term fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

It is undisputed that this term is ambiguous on its face. For example, a POSITA may determine that the second step refers to ***when*** something occurs or ***whether*** something occurs. KAIFI's proposed construction presents additional issues in that there is no antecedent basis for the "***received*** indoor system ID information." Specifically, "received indoor system ID information", as set forth in KAIFI's proposed construction, would now appear for the first time in the claim in the "whether/when" limitation. However, the "whether/when" limitation occurs ***prior to*** ever receiving "indoor system ID information" in the claim. In other words, there is no claim language that precedes this term where "indoor system ID information" is ***received*** in the first place. In light of that undisputed fact, the original language supports a construction opposite to KAIFI's construction (*i.e.,* that the first step requires receiving indoor system ID information first before making a determination). Despite intrinsic support for that opposite construction, KAIFI (including its experts) arrived at a different conclusion. Thus, this claim term is indefinite because the construction lacks reasonable certainty. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (term held to be indefinite without antecedent basis).

The '728 Patent describes that "[w]hen the user turns on the PDA 10 outdoors, the PDA 10 is initialized and is supplied with electric power (step S10)" and that "the PDA 10 confirms as to whether the indoor system ID information is received." '728 Patent at 9:38-41. Notably, "[i]f it is determined that the registered system ID information of the indoor network is not received, the PDA 10 is set in an outdoor communication mode." *Id.* at 41-44. Thus, if the data communication terminal never receives "indoor system ID information" a determination is never

made by which the "indoor system ID information" can be compared to "indoor system ID information stored in the location register." *See also id.* at 11:21-22; 12:56-65.

KAIFI argues that the claim should be construed to omit the phrase "when" from the "whether when" claim language resulting in a construction for the second step where only a determination is made about whether the "received indoor system ID information is identical to the indoor system ID information stored in the location register." KAIFI would have this Court err by substituting new erroneous claim language for the flawed original language. Specifically, there is no claim language that supports receiving "indoor system ID information" in the first place. Courts have routinely held that claims having terms that lack antecedent basis are indefinite. *Halliburton*, 514 F.3d at 1249.

KAIFI's arguments also fail to address that the received "indoor system ID information" adds further ambiguity by not specifying who or what is receiving the information. Indeed, under KAIFI's proposed construction, any device within the system may receive "indoor system ID information." This fact adds further ambiguity which would fail to inform a POSITA with reasonable certainty about the scope of the invention. Equally important, there is no implicit determination that can be made regarding antecedent basis, because KAIFI's construction would result in failing to identify with clarity whether "indoor system ID information" is received in the first place or by whom. *See Cellular Commc'ns Equip. LLC v. AT&T, Inc.*, 2:15-CV-576-RWS-RSP, 2016 WL 7364266, at *9 (E.D. Tex. Dec. 19, 2016) (holding the term "apparatus" indefinite where the claims do not implicitly identify antecedent basis).

KAIFI's proposed construction results in a construction that lacks antecedent basis, and it is respectfully requested that the Court determine that this term is indefinite.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 19, 2021 | /s/ Deron R. Dacus |

Deron R Dacus
The Dacus Firm, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
903/705-1117
Fax: 903/581-2543
Email: ddacus@dacusfirm.com

**DUANE MORRIS LLP**

Kevin P. Anderson
KPAnderson@duanemorris.com
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: (202) 776 7851
Facsimile: (202) 478 2620

Alice Snedeker
AESnedeker@duanemorris.com
Glenn D. Richeson
gdricheson@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  (404) 253.6900
Facsimile:  (404) 253.6901

*Attorneys for Defendants VERIZON COMMUNICATIONS INC.; CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; VERIZON SERVICES CORP.; VERIZON ENTERPRISE SOLUTIONS, LLC; VERIZON BUSINESS GLOBAL LLC; VERIZON BUSINESS NETWORK SERVICES, LLC; VERIZON CORPORATE SERVICES GROUP INC.; VERIZON DATA SERVICES, LLC; VERIZON MEDIA INC.; and VERIZON ONLINE LLC,*

## **CERTIFICATE OF SERVICE**

      I certify that on May 19, 2021, the foregoing document was served on all counsel who have consented to electronic service.

*/s/ Deron R. Dacus*

Deron R. Dacus
